**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GAIL FUSARO | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 2:08-cv-04755-WY |
| | : | |
| WILMINGTON TRUST OF | : | |
| PENNSYLVANIA, et al | : | |
| Defendants, | : | |

## AMENDED COMPLAINT

1. Plaintiff Gail Fusaro is an adult individual, who resides at 7928 Beverly Blvd, Upper Darby, PA 19082 and is a citizen of the Commonwealth of Pennsylvania.

2. Defendant is Wilmington Trust of Pennsylvania ("Wilmington Trust"), is an organized and existing business entity, regularly and continuously conducting business at797 East Lancaster Ave, Suite 6 Villanova PA 19082.  Wilmington Trust is a banking institution.

3. Defendant Wilmington Trust Corporation ("Wilmington Corporation") is an organized and existing business entity, regularly and continuously conducting business at 110 North Market Street, Wilmington, DE 19890. Wilmington Corporation is a banking institution.  It is the parent corporation of defendant Wilmington Trust.  It is responsible for ensuring that defendant Wilmington Trust conducts business in accordance with established banking standards.

4. At all times relevant hereto the defendant Wilmington

1

Trust acted through its worker, servants, agents, employees and officers including a Vice President, Kevin McAllister, who had the authority to bind Wilmington Trust by his actions.

5.   Defendant Bernadette M. Nicholas ("Nicholas") is an adult individual who resides at 105 Camelot Court, Newtown Square PA 19073 and is a citizen of the Commonwealth of Pennsylvania.

6.   At all times relevant to this Complaint, Kevin McAllister was an agent, servant, workman, employee, and/or officer of defendant Wilmington Trust, acting within the course and scope of his employment, and for the benefit of defendant Wilmington Trust.

7.   At all times relevant hereto Defendant Nicholas was an actual or implied agent of defendant Wilmington Trust, who received monies for successful financing between persons represented by her and Wilmington Trust.  Nicholas worked as a Mortgage Broker providing persons seeking financing from defendant Wilmington Trust to that defendant and performing related mortgage brokerage services for these persons and Wilmington Trust.

8.   In the Spring of 2006 the plaintiff's son, James Fusaro, was interested in buying a pizza shop called "Uncle Nick's Pizza." The owner of the pizza shop was Haralampus Saritsoglou. Mr. Sartitsoglou misrepresented to James Fusaro the income of the pizza shop. Mr. Saritsoglou's asking price for the pizza shop was $200,000.00. When James Fusaro informed him that he did not have that much money, Mr. Saritsoglou told him to

2

call his friend, Bernadette Nicholas, who was a mortgage broker for Wilmington Trust. When Mr. Fusaro expressed concern about a loan that size, Mr. Saritsoglou said, "Don't worry, Bernadette (Nicholas) will get it done." Mr. Saritsoglou referred to Nicholas as his "fairy godmother."

9.   James Fusaro met with Bernadette Nicholas and was informed he could not get the loan, especially because he did not have any real property to secure the loan. After discussion, Nicholas learned that James Fusaro's mother, Gail Fusaro, owned a house.

10.   Gail Fusaro owned the real property known as 7928 Beverly Blvd, Upper Darby, PA 19082. The only lien against the property was a small mortgage in the amount $7,000.00. Gail Fusaro is a consumer, homeowner who is not in the business and had no interest in the pizza shop.

11.   Gail Fusaro was hesitant to finance her house. She could not afford the payment on a loan which she was informed by Nicholas would be in the amount of $220,000.00. She has been informed it would be a conventional thirty (30) year mortgage.

12.   Gail Fusaro expressed her concerns to Bernadette Nicholas at a meeting Nicholas had arranged at a Dunkin Donuts. Nicholas informed her that she knew Mr. Saritsoglou, that she had seen the financial books at the pizza shop and that there was no reason that her son, James Fusaro, could not repay the loan in full in less than three (3) years with income from the pizza shop.

13.   After the assurance made by Nicholas, Gail Fusaro

3

agreed to a loan against her house which she was told by
Nicholas was a conventional thirty (30) year mortgage with a
principal amount of $220,000.00. Gail Fusaro did not at all get
a conventional loan as she believed but instead a business loan
for which she did not have the income to pay. There was no
explanation to Gail Fusaro of the difference between this
business loan and a conventional consumer loan and no effort
made to inform her of the benefits of the consumer loan.

14.   At settlement for the May 19, 2006 loan Nicholas
insisted that Gail Fusaro immediately pay Mr. Saritsoglou. A
cashier's check was provided to Mr. Saritsoglou. This loan was
signed for Wilmington Trust Corporation by Kevin McAllister.

15.   Gail Fusaro was not informed that the $220,000.00 loan
was an interest only loan. (See Exhibit A).

16.   Four (4) days later, defendant Nicholas together with
Mr. McAllister of Wilmington Trust settled on another loan, in
the amount of $25,000.00. The plaintiff did not sign. The
signatures on the loan documents are not hers. (See Exhibit B).

17.   Upon taking possession of the pizza shop it was
learned that it was not making close to the income that was
reported. The plaintiff's son was not able to keep up the high
payments on the loans and a default on the loans occurred. It
turns out the loan was an interest only loan.

18.   Wilmington Trust of Pennsylvania confessed judgment
against Gail Fusaro in the amount of $251,862.63, plus attorney
fees and costs on or about August 13, 2007. (See Exhibit C). Had
this been a consumer loan as the plaintiff had believed the bank

4

would not have been permitted to confess judgment.

19.   The plaintiff, fearing she would lose her house, without legal counsel and unaware of the numerous fraudulent irregularities surrounding the loans sought out another mortgage with another mortgage company to repay Wilmington Trust the fraudulently obtained loans.

20.   The plaintiff did pay Wilmington Trust the full amount of the judgment with the new mortgage. The new mortgage is now in foreclosure and her home has been sold at Sheriff's Sale.

21.   Due to the malfeasance of Bernadette Nicholas and Kevin McAllister of Wilmington Trust of Pennsylvania the plaintiff who owed only $7,000.00 on her house now owes over $290,000.00 and has lost her house. Nicholas and McAllister were basically permitted without adequate oversight to make these questionable and fraudulent loans. Defendants Wilmington Trust of Pennsylvania knew or should have known based upon prior lonas that there tow were participating in a questionable practice.

22.   As a result of the fraud against the plaintiff which has resulted in her losing her home, the plaintiff is distraught and sick to her stomach, she has headaches, body aches, and continuously cries. She has had to pay lawyers to help her and her credit is ruined.

23.   The defendants failed to secure identification of the plaintiff for the May 23, 2006 loan.

## COUNT I

### CONSPIRACY TO MISREPRESENT OR CONCEAL FACTS

24.   All allegations in paragraphs one through twenty three (23) are incorporated herein by reference.

25.   The defendant Nicholas, and Wilmington Trust of Pennsylvania through agent McAllister did permit or participate in allowing a signature no the plaintiff's on the May 23, 2006 loan. Nicholas, the apparent agent of Wilmington Trust, did misrepresent to the plaintiff the terms of the loan. Nicholas also told her that the loan could easily be repaid in less than three (3) years, told her it was a conventional mortgage and did not tell her it was a business loan or the difference between a consumer and a business loan.

26.   The plaintiff who believed the defendants were dealing with her in good faith justifiably relied on the misrepresentations.

27.   The defendants lied to the plaintiff so that they could make money. Nicholas was paid a fee, and the bank made money. Nicholas also made sure her friend, Mr. Saritsoglou was immediately paid the $200,000.00.

28.   As a result of the misrepresentation, the plaintiff is damaged as shehas lost her home to foreclosure.

29.   Defendant Wilmington Trust Corporation negligently failed to properly discharge its responsibility for ensuring that defendant Wilmington Trust conducted business in accordance with established banking standards and failed to oversee Nicholas and McAllister which they knew or should have known

6

from other loans were participating in questionable loan
practices.

WHEREFORE, Plaintiff Gail Fusaro demands damages from the
Defendants individually, jointly and/or severally, in an amount
in excess of Fifty Thousand Dollars ($50,000.00), plus interest
thereon, costs, attorneys fees, punitive damages, treble
damages, and such other relief as the Court shall deem just and
appropriate.

<div align="center">

**COUNT II**
**VIOLATION OF THE UTPCL**

</div>

30.   Plaintiff repeats and realleges paragraphs 1 through
twenty-nine above as if the same were set forth herein at
length.

31.   The Pennsylvania Unfair Trade Practices and Consumer
Protection Law, 73 P.S. 201-1, et seq. ("UTPCL"), at section
201-3, outlaws unfair methods of competition and unfair or
deceptive acts or practices in the conduct of any trade or
commerce as defined by subclauses (i) through (xxi) of clause
(4) of section 2 (73 P.S. section 201-2) of the act and
regulations promulgated under section 3.1 (73 P.S. section 201-
3.1) of the act are unlawful.

32.   73 P.S. 201-2 (4)(xviii) makes unlawful any use of a
contract, form or any document related to a consumer transaction
which contains a confessed judgment clause that waives the
consumer's right to assert a legal defense to an action.  By
reason of the foregoing, defendants are in violation of this

clause.

33.   73 P.S. 201-2 (4)(xxi) makes unlawful engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.  By reason of the foregoing, Defendants are in violation of this clause.

34.   Defendants, acting individually, and/or through their agents, workers and/or servants, as aforesaid, fraudulently, maliciously affixed plaintiff's signature to the May 23, 2006 Loan in violation of the UTPCL.

35.   By reason of the foregoing, plaintiff Gail Fusaro has sustained injury and damages and has been forced into multiple and expensive litigation.

WHEREFORE, Plaintiff Gail Fusaro demands damages from the Defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

## COUNT III

### FORGERY

36.   Plaintiff repeats and realleges paragraphs 1 through thirty-five above as if the same were set forth herein at length.

37.   Defendants, acting individually, and/or through their agents, workers, employees, servants and/or officers as aforesaid, fraudulently, maliciously affixed a signature they

8

knew was not the plaintiff's signature to the May 26, 2006 Loan.

38.   In essence, defendants made and completed an instrument (May 23, 2006 loan) by someone other than the ostensible maker or plaintiff.

39.   By reason of the foregoing, Plaintiff Gail Fusaro sustained injury and damages and has been forced into multiple and expensive litigation.

WHEREFORE, Plaintiff Gail Fusaro demands damages from the Defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

## COUNT IV

### FRAUD

40.   Plaintiff repeats and realleges paragraphs 1 through thirty nine above as if the same were set forth herein at length.

41.   Defendants, acting individually, and/or through their agents, workers, employees, servants and/or officers, as aforesaid, fraudulently, maliciously and/or intentionally affixed plaintiff's signature to the May 23, 2006 Loan. They also misrepresented the terms of the May 19, 2006 loan.

42.   In causing the aforesaid forgery, Defendants knowingly made a false representations, in conscious ignorance of the truth. The fraudulent conduct is described throughout this

Complaint.

43.  By reason of the foregoing, plaintiff Gail Fusaro has sustained injury and damages and has been forced into multiple and expensive litigation.

WHEREFORE, plaintiff Gail Fusaro demands damages from the Defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

<center>

**COUNT V**

**MALFEASANCE**

</center>

44.  Plaintiff repeats and realleges paragraphs 1 through forty-three above as if the same were set forth herein at length.

45.  By reason of the foregoing, Vice President Kevin McAllister, acting as aforesaid, is liable for malfeasance.

46.  As the employer of Kevin McAllister and apparent employer of Nicholas, defendant Wilmington Trust is vicariously liable for damages resulting from the actions of McAllister and/or Nicholas.

47.  As the parent corporation of defendant Wilmington Trust and the entity responsible for ensuring that defendant Wilmington Trust conducts business in accordance with established banking standards, defendant Wilmington Corporation is vicariously liable for damages resulting from the actions of McAllister and/or Nicholas.

<center>10</center>

48.   By reason of the foregoing, plaintiff Gail Fusaro has sustained injury and damages and has been forced into multiple and expensive litigation and has lost her home to foreclosure.

WHEREFORE, Plaintiff Gail Fusaro demands damages from the defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

## COUNT VI

### MISFEASANCE

49.   Plaintiff repeats and realleges paragraphs 1 through forty-eight above as if the same were set forth herein at length.

50.   By reason of the foregoing McAllister and Nicholas acting as aforesaid, are liable for misfeasance.

51.   As the employer of Kevin McAllister and apparent employer of Nicholas, Defendant Wilmington Trust is vicariously liable for damages resulting from the actions of McAllister and/or Nicholas.

52.   As the parent corporation of defendant Wilmington Trust and the entity responsible for ensuring that defendant Wilmington Trust conducts business in accordance with established banking standards, defendant Wilmington Corporation is vicariously liable for damages resulting from the actions of Kevin McAllister and/or Nicholas.

53.   By reason of the foregoing, plaintiff Gail Fusaro has

11

sustained injury and damages and has been forced into multiple
and expensive litigation.

WHEREFORE, plaintiff Gail Fusaro demands damages from the
defendants individually, jointly and/or severally, in an amount
in excess of Fifty Thousand Dollars ($50,000.00), plus interest
thereon, costs, attorneys fees, punitive damages, treble
damages, and such other relief as the Court shall deem just and
appropriate.

<div align="center">

**COUNT VII**

**NONFEASANCE**

</div>

54.   Plaintiff repeats and realleges paragraphs 1 through
fifty-three above as if the same were set forth herein at
length.

55.   By reason of the foregoing, McAllister and Nicholas
acting as aforesaid, is liable for malfeasance and/or
misfeasance.

56.   As the employer of Kevin McAllister an apparent
employer of Nicholas, Defendant Wilmington Trust is vicariously
liable for damages resulting from the actions of McAllister
and/or Nicholas in that it failed to perform its supervisory and
oversight duties related to the loans.

57.   As the parent corporation of defendant Wilmington
Trust and the entity responsible for ensuring that defendant
Wilmington Trust conducts business in accordance with
established banking standards, defendant Wilmington Trust
Corporation is vicariously liable for damages resulting from the
actions of Kevin McAllister and/or and Nicholas in that it

<div align="center">12</div>

failed to perform its supervisory and oversight duties related to the Loans.

58. By reason of the foregoing, plaintiff Gail Fusaro has sustained injury and damages and has been forced into multiple and expensive litigation.

WHEREFORE, plaintiff Gail Fusaro demands damages from the Defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

<div align="center">

**COUNT X**

**NEGLIGENCE**
</div>

59. Plaintiff repeats and realleges paragraphs 1 through fifty-eight above as if the same were set forth herein at length.

60. By reason of the foregoing, Kevin McAllister and Nicholas acting as aforesaid, are liable for malfeasance and/or misfeasance.

61. As the employer of Kevin McAllister and apparent employer of Nicholas, defendant Wilmington Trust is vicariously liable for damages resulting from the actions of McAllister and Nicholas in that it failed to perform its supervisory and oversight duties related to the Loans or, in the alternative, negligently performed its duties. The bank knew or should have known through investigation that this loan was not proper and that McAllister and Nicholas had other questionable loans.

Despite this fact the bank still confessed judgment.

62.   As the parent corporation of defendant Wilmington Trust and the entity responsible for ensuring that defendant Wilmington Trust conducts business in accordance with established banking standards, defendant Wilmington Corporation is vicariously liable for damages resulting from the actions of Kevin McAllister and/or Nicholas in that it failed to perform its supervisory and oversight duties related to the Loans or, in the alternative, negligently performed its duties.

63.   By reason of the foregoing, plaintiff Gail Fusaro has sustained injury and damages and has been forced into multiple and expensive litigation.

WHEREFORE, plaintiff Gail Fusaro demands damages from the Defendants individually, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest thereon, costs, attorneys fees, punitive damages, treble damages, and such other relief as the Court shall deem just and appropriate.

Respectfully Submitted,

**JOHN NEUMANN HICKEY, ESQUIRE**
By:   /s/ *John Neumann Hickey, Esq.*
Validation of Signature: **JNH5991**
John Neumann Hickey, Esq.
PA Bar No. 61896
20 West Front Street
Media, PA 19063
Telephone: (610) 891-8883
Facsimile: (610) 891-8923
JNH@hickeylaw.net

# EXHIBIT A



# WILMINGTON TRUST

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $220,000.00 | 05-19-2006 | | | 10-400 / 5110-400 | | 00642 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Gail L. Fusaro (SSN: 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)
Deanna Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

**Lender:** Wilmington Trust of Pennsylvania
Villanova Office ( 433 )
795 E. Lancaster Avenue
Suite 6
Villanova, PA 19085

---

**Principal Amount: $220,000.00**     **Initial Rate: 9.000%**     **Date of Note: May 19, 2006**

**PROMISE TO PAY.** Gail L. Fusaro and Deanna Fusaro ("Borrower") jointly and severally promise to pay to Wilmington Trust of Pennsylvania ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Two Hundred Twenty Thousand & 00/100 Dollars ($220,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 19, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the "prime rate" (or high point in a range of "prime rates") published in the "Money Rates" column of The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day, based upon the latest information published in the "Money Rates" column of The Wall Street Journal prior to the beginning of each such calendar month.. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 8.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 9.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's interest payments.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Wilmington Trust of Pennsylvania, Villanova Office ( 433 ), 795 E. Lancaster Avenue, Suite 6, Villanova, PA 19085.

**LATE CHARGE.** If a regularly scheduled interest payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 15 days after Lender's demand, Borrower also will be charged either 5.000% of the sum of the unpaid principal plus accrued unpaid interest or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 3.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. If judgment is entered in connection with this Note, interest will continue to accrue on this Note after judgment at the interest rate applicable to this Note at the time judgment is entered.

**LENDER'S RIGHTS.** Upon Lender's demand, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts,

and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Wilmington Trust of Pennsylvania, Villanova Office ( 433 ), 795 E. Lancaster Avenue, Suite 6, Villanova, PA  19085.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower  (a) make one or more additional secured or unsecured loans or otherwise extend additional credit;  (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness;  (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral;  (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non–judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine;  (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  and  (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
Gail L. Fusaro

X _____ (Seal)
Deanna Fusaro



WILMINGTON TRUST

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $220,000.00 | 05-19-2006 | | | 10-400 / 5110-400 | | 00642 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Gail L. Fusaro (SSN: 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)
Deanna Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

**Lender:** Wilmington Trust of Pennsylvania
Villanova Office ( 433 )
795 E. Lancaster Avenue
Suite 6
Villanova, PA 19085

**Declarant:** Gail L. Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS ________ DAY OF ______________________, 20____, A PROMISSORY NOTE FOR $220,000.00 OBLIGATING ME TO REPAY THAT AMOUNT.

A. I UNDERSTAND THAT THE NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE NOTE, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE NOTE, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ______

B. I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ______

C. AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

______ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NOTE.

______ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE TO MY ATTENTION.

D. I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

## DISCLOSURE FOR CONFESSION OF JUDGMENT
### (Continued)

Page 2

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X _____ (Seal)
Gail L. Fusaro

LASER PRO Lending, Ver. 5.29.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2008.   All Rights Reserved.   – PA  L:\WINDOWS1\CFI\LPL\D30.FC  TR-69222  PR-199

# EXHIBIT B



# WILMINGTON TRUST

## PROMISSORY NOTE

| Principal $25,000.00 | Loan Date 05-23-2006 | Maturity | Loan No | Call/Coll 4A/4A 4110-100 | Account | Officer 00642 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Gail L. Fusaro (SSN: 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)
Deanna Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

**Lender:** Wilmington Trust of Pennsylvania
Villanova Office ( 433 )
797 E. Lancaster Avenue
Villanova, PA 19085

---

**Principal Amount: $25,000.00**       **Initial Rate: 9.000%**       **Date of Note: May 23, 2005**

**PROMISE TO PAY.** Gail L. Fusaro and Deanna Fusaro ("Borrower") jointly and severally promise to pay to Wilmington Trust of Pennsylvania ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Twenty-five Thousand & 00/100 Dollars ($25,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 23, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the WILMINGTON TRUST COMPANY NATIONAL COMMERCIAL RATE (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The index currently is 8.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the index, resulting in an initial rate of 9.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's interest payments.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Wilmington Trust of Pennsylvania, Villanova Office ( 433 ), 797 E. Lancaster Avenue, Villanova, PA 19085.

**LATE CHARGE.** If a regularly scheduled interest payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater. If Lender demands payment of this loan, and Borrower does not pay the loan in full within 15 days after Lender's demand, Borrower also will be charged either 5.000% of the sum of the unpaid principal plus accrued unpaid interest or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 3.000 percentage points over the index. The interest rate will not exceed the maximum rate permitted by applicable law. If judgment is entered in connection with this Note, interest will continue to accrue on this Note after judgment at the interest rate applicable to this Note at the time judgment is entered.

**LENDER'S RIGHTS.** Upon Lender's demand, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

# PROMISSORY NOTE
## (Continued)

**PROPERTY INSURANCE.** Borrower understands that Borrower is required to obtain insurance for the collateral securing this Note. Further information concerning this requirement is set forth in the Mortgage and in the Agreement to Provide Insurance, all the terms and conditions of which are hereby incorporated and made a part of this Note.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Wilmington Trust of Pennsylvania, Villanova Office ( 433 ), 797 E. Lancaster Avenue, Villanova, PA  19085.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower  (a) make one or more additional secured or unsecured loans or otherwise extend additional credit;  (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness;  (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral;  (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine;  (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  and  (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:


X_____(Seal)
  Gail L. Fusaro

X_____(Seal)
  Deanna Fusaro

LASER PRO Lending, Ver. 3.32.40.003  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - PA  L\WINDOWS\11CFILPL\D20.FC  TR-4ee41  PR-120



## WILMINGTON TRUST

### BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $250,000.00 | 05-23-2006 | | | 30-400 / 4341-00 | | 0042 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:**
Gail L. Fusaro (SSN: 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)
Deanna Fusaro (SSN: 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)
7929 Beverly Boulevard
Upper Darby, PA 19082

**Lender:**
Wilmington Trust of Pennsylvania
Villanova Office ( 433 )
797 E. Lancaster Avenue
Villanova, PA 19085

THIS BUSINESS LOAN AGREEMENT dated May 23, 2006, is made and executed between Gail L. Fusaro and Deanna Fusaro ("Borrower") and Wilmington Trust of Pennsylvania ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of May 23, 2006, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Gail L. Fusaro maintains an office at 7929 Beverly Boulevard, Upper Darby, PA 19082. Unless Gail L. Fusaro has designated otherwise in writing, the principal office is the office at which Gail L. Fusaro keeps its books and records including its records concerning the Collateral. Gail L. Fusaro will notify Lender prior to any change in the location of Gail L. Fusaro's principal office address or any change in Gail L. Fusaro's name. Gail L. Fusaro shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Gail L. Fusaro and Gail L. Fusaro's business activities.

**Deanna Fusaro** maintains an office at 2568 Bond Avenue, Drexel Hill, PA 19026. Unless Deanna Fusaro has designated otherwise in writing, the principal office is the office at which Deanna Fusaro keeps its books and records including its records concerning the Collateral. Deanna Fusaro will notify Lender prior to any change in the location of Deanna Fusaro's principal office address or any change in Deanna Fusaro's name. Deanna Fusaro shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Deanna Fusaro and Deanna Fusaro's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower's financial condition, and which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this

Case 2:08-cv-04755-WY    Document 11    Filed 10/20/08    Page 25 of 37

# BUSINESS LOAN AGREEMENT
## (Continued)

Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without demand of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Borrower agrees and consents to Lender's sharing and disclosing, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**Joint and Several Liability.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean

each and every Borrower. This means that each Borrower signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Gail L. Fusaro and Deanna Fusaro and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Wilmington Trust of Pennsylvania, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Gail L. Fusaro and Deanna Fusaro in the principal amount of $25,000.00 dated May 23, 2008, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

## BUSINESS LOAN AGREEMENT
### (Continued)

Page 5

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MAY 23, 2006.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
Gail L. Fusaro

_____ (Seal)
Deanna Fusaro

LENDER:

WILMINGTON TRUST OF PENNSYLVANIA

By: _____ (Seal)
Authorized Signer

LaserPro Lending, Ver. 5.28.10.007 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - PA L:\CFI\LPL\PROFILE\C40.FC TR-43011 PR-108



# WILMINGTON TRUST

## DISCLOSURE FOR CONFESSION OF JUDGMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-----------|---------|---------|----------|
| $25,000.00 | 05-23-2006 | | | 30-400-5110-405 | | 00642 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: Gail L. Fusaro (SSN: 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)
Deanna Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

Lender: Wilmington Trust of Pennsylvania
Villanova Office ( 433 )
797 E. Lancaster Avenue
Villanova, PA 19085

Declarant: Gail L. Fusaro (SSN: 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)
7928 Beverly Boulevard
Upper Darby, PA 19082

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS _____ DAY OF _____, 20_____, A PROMISSORY NOTE FOR $25,000.00 OBLIGATING ME TO REPAY THAT AMOUNT.

A.  I UNDERSTAND THAT THE NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE NOTE, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE NOTE, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.
INITIALS: ▓▓▓▓

B.  I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.
INITIALS: ▓▓▓▓

C.  AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH STATEMENT THAT APPLIES, I REPRESENT THAT:

INITIALS

_____ 1. I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NOTE.

_GAF_ 2. A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE TO MY ATTENTION.

D.  I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

X_____ (Seal)
Gail L. Fusaro

# EXHIBIT C

## THE COURT OF COMMON PLEAS
### DELAWARE COUNTY, PENNSLYVANIA

| | | |
|---|---|---|
| WILMINGTON TRUST OF PENNSYLVANIA<br>795 E. Lancaster Avenue, Suite 6<br>Villanova, PA 19085, | : | COURT OF COMMON PLEAS<br>DELAWARE COUNTY |
| Plaintiff, | : | |
| v. | : | |
| | : | No. _____ |
| Gail L. Fusaro<br>7928 Beverly Boulevard<br>Upper Darby, PA 19082 | : | |
| And | : | |
| Deanna Fusaro<br>7928 Beverly Boulevard<br>Upper Darby, PA 19082 | : | |
| Defendants. | : | |

## <u>236 NOTICE</u>

TO:   Gail L. Fusaro

and

Deanna Fusaro

NOTICE IS GIVEN THAT A JUDGMENT IN THE ABOVE CAPTIONED MATTER HAS BEEN ENTERED AGAINST YOU FOR DEBT OWED IN THE AMOUNT OF $251,862.63 (principal sum, interest and late charges), WITH ATTORNEYS' FEES TO BE DETERMINED. ENCLOSED HEREWITH IS A COPY OF ALL THE DOCUMENTS FILED IN SUPPORT OF THE SAID JUDGMENT.

*OFFICE OF JUDICIAL SUPPORT*

IF YOU HAVE ANY QUESTIONS CONCERNING THE ABOVE, PLEASE CONTACT:

FREY, PETRAKIS, DEEB, BLUM & BRIGGS, P.C.
JONATHAN M. PETRAKIS, ESQUIRE
STEPHEN J. ALEXANDER, ESQUIRE
1601 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 563-0500

Attorneys for Plaintiff,
Wilmington Trust of Pennsylvania

**FREY PETRAKIS DEEB BLUM & BRIGGS, P.C.**
By:     Jonathan M. Petrakis, Esquire
        Stephen J. Alexander, Esquire
Identification Nos. 39202/62085
1601 Market Street, Suite 2600
Philadelphia, PA 19103-7396
(215) 563-0500

Attorneys for Plaintiff

| | | |
|---|---|---|
| WILMINGTON TRUST OF PENNSYLVANIA<br>795 E. Lancaster Avenue, Suite 6<br>Villanova, PA 19085, | : | COURT OF COMMON PLEAS<br>DELAWARE COUNTY |
| Plaintiff, | : | |
| v. | : | |
| Gail L. Fusaro<br>7928 Beverly Boulevard<br>Upper Darby, PA 19082 | : | No. _____ |
| And | : | |
| Deanna Fusaro<br>7928 Beverly Boulevard<br>Upper Darby, PA 19082 | : | |
| Defendants. | : | |

## COMPLAINT

## CONFESSION OF JUDGMENT UNDER PA.R.C.P. 2951

Plaintiff, Wilmington Trust of Pennsylvania (hereinafter "Plaintiff" or "Wilmington Trust"), by and through its attorneys Frey, Petrakis, Deeb, Blum & Briggs, P.C., files this Complaint for judgment by confession pursuant to Rules 2950 et seq., of the Pennsylvania Rules of Civil Procedure and, in support hereof, states as follows:

### THE PARTIES

1.      Plaintiff Wilmington Trust of Pennsylvania ("Wilmington Trust" or "Plaintiff") is a banking institution and has an office and place of business located at 795 E. Lancaster Avenue, Suite 6, Villanova, Pennsylvania.

2.      Defendants, Gail L. Fusaro and Deanna Fusaro, mother and daughter (hereinafter collectively "Defendants" or "Borrowers", unless otherwise noted), are adult individuals whose last known address was 7928 Beverly Boulevard, Upper Darby, Pennsylvania 19082.

## COUNT I
### FOR JUDGMENT OF MONEY (DEBT OWED)
### Pa.R.C.P. 2950 et seq.

3.      Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein at length.

4.      Pursuant to certain Business Loan Agreements dated May 19, 2006, and May 23, 2006, by and between Wilmington Trust and Borrowers (the "Loan Agreements"), Wilmington Trust made available to the Borrowers a certain line of credit in the original principal amounts of $220,000.00 and $25,000.00, respectively (the "Loans").  The Loan Agreements provide the terms and conditions pursuant to which the Loans would be advanced.  True and correct copies of the Loan Agreements are attached hereto, incorporated herein and marked as Exhibits "A" and "B", respectively.

5.      The Loans are evidenced by certain Promissory Notes (the "Notes") dated May 19, 2006, and May 23, 2006, in the principal amounts of $220,000.00, and $25,000.00 by the Borrowers in favor of Wilmington Trust with interest at the rate of the Wall Street Journal Prime Rate plus 1% per annum and at the rate the Lender's Rate plus 1% per annum, respectively.  True and correct copies of the Notes are attached hereto, incorporated herein and marked as Exhibits "C" and "D", respectively.

6.      The Notes contain provisions that allow Wilmington Trust as lender to confess judgment against the Borrowers upon default by Borrowers. *See* Exhibits "C" and "D" hereto, at page 2.

7.      As evidence of their understanding, also dated May 19, 2006 and May 23, 2006, Borrowers signed Disclosure for Confession of Judgment forms (the "Disclosures for Confession") for the Loans in which the Confession of Judgment provision in the Notes were specifically called to Borrowers' attention. True and correct copies of the Disclosures for Confession are attached hereto, incorporated herein and marked as Exhibit "E", "F", and "G", respectively.

8.      In the Disclosures for Confession, Borrowers further acknowledged and understood among other things, that the Notes contained Confession of Judgment provisions

that would permit Wilmington Trust to enter judgment against them in court, after default of the note without advance notice. *See* Exhibit "E", "F", and G", ¶ A.

9.      The Loan Agreements, the Notes, and the Disclosures for Confession are hereinafter referred to collectively as the "Loan Documents".

10.      Pursuant to the terms of the Loan Agreements, events of default occur when Borrowers fail to make any payment when due under the Loan Agreement.   *See* Exhibit "A" and "B", page 3.

11.      The Notes required Borrowers to make payments monthly beginning June 19, 2006 and June 23, 2006 and continuing on the same day of each month thereafter. The full amount is due upon demand.

12.      The Borrowers have defaulted under the terms of the Notes by, among other things, failure to make timely payments in accordance with the terms of the Loan Documents, and failure to satisfy the payments required on the Loans since May 19, 2007 and April 23, 2007, respectively.

13.      Although not required under the terms of the Loan Agreements, Wilmington Trust notified Borrowers of the occurrence and continuance of the aforesaid events of default and declared the entire unpaid principal balance on the Notes, together with all accrued and unpaid interest and other costs and charges, including legal fees, immediately due by letter of Wilmington Trust's counsel, Frey Petrakis Deeb Blum & Briggs, P.C., dated June 25, 2007 ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto and incorporated herein by reference as Exhibit "H".

14.      Pursuant to the terms of the Notes, attached hereto as Exhibits "C" and "D", Plaintiff Wilmington Trust is entitled to confess judgment against Borrowers because amounts due from Borrowers to Plaintiff are unpaid, and despite demand by Plaintiff upon the Borrowers, the Borrowers have failed to pay Plaintiff all indebtedness due from the Borrowers, to Plaintiff, and the Borrowers have led Wilmington Trust to believe that the prospect of payment is impaired.

15.      Despite Wilmington Trust's Demand Letter to Borrowers, Borrowers have not satisfied any of their outstanding obligations under the Notes to Wilmington Trust.

16.     Under the Notes and the Confession of Judgment provisions therein, Plaintiff is empowered to confess judgment against Borrowers for the amount owed.  *See* Exhibit "C" and "D", page 2.

17.     Plaintiff is also entitled to recover from Borrowers all accrued interest, late charges, and an attorney's commission of ten percent (10%) of the unpaid balance and accrued interest, but not less than $500.00. *See* Exhibit "C" and "D", page 2.

18.     As of July 30, 2007, the amounts due and owing by Borrowers to Wilmington Trust under the Note are as follows:

| | |
|---|---|
| Principal | $244,984.35 |
| Interest (through 7/30/07) | $   6,545.50 |
| Late Charges | $      332.78 |
| Other Authorized Items:<br>(Attorneys' Fee of 10%,<br>but not less than $500.00) | $_____TBD |
| **TOTAL** | $251,862.63 |

(subject to increase for interest at the Prime Rate per annum and together with interest accruing after July 30, 2007 at the per diem rate of $62.95).

19.     The Warrant of Attorney involved in the instant lawsuit appearing in the Note is less than twenty years old.

20.     Judgment is not being entered against a natural person in connection with a consumer credit transaction.

21.     No judgment has been entered on the Notes in any jurisdiction.

**WHEREFORE**, Plaintiff Wilmington Trust of Pennsylvania demands judgment in its favor and against Defendants Gail L. Fusaro and Deanna Fusaro, for the amount of $251,862.63, plus attorney's fees already incurred, continuing interest at the rate of $62.95, noted in this Complaint from July 30, 2007 until the date the judgment is paid, and future

attorney's fees incurred by Plaintiff after July 30, 2007, and requests that the Prothonotary enter judgment in conformity with the warrants of attorney attached hereto.

**FREY, PETRAKIS, DEEB, BLUM & BRIGGS, P.C.**

Jonathan M. Petrakis
Stephen J. Alexander

DATED: *8·9·07*

Attorneys for Plaintiff,
Wilmington Trust of Pennsylvania

**VERIFICATION**

I, Gregory L. Felix, state that I am authorized to make this Verification on behalf of Plaintiff, and that the facts set forth in the preceding Complaint are true and correct to the best of my information and belief. This Verification is made with knowledge of the penalties contained in 18 Pa.C.S.A. §4904, relating to unsworn verification to authorities.

By: _Gregor L. Felix_____
Gregory L. Felix
Loan Recovery Representative
Wilmington Trust of Pennsylvania

Dated: _August 7, 2007_

## CERTIFICATE OF SERVICE

I, John Neumann Hickey, attorney for the Plaintiff do hereby verify and say that I served a true and correct copy of the attached **PLAINTIFF'S AMENDED COMPLAINT** in the case *Fusaro v. Wilmington Trust, et al* Civil Action No. 08-4755 to the following parties via e-mail and first class U.S. mail:

Delores M. Troiani, Esquire
38 North Waterloo Road
Devon, PA 19333
(Attorney for Bernadette Nicholas)

Sarah E. Davies, Esquire
Cozen & O'Conner
1900 Market Street
Philadelphia, PA 19103
(Attorney for Defendants
Wilmington Trust Co., Wilmington
Trust of PA. And Amy Murphy)

Date: 10/17/2008

By: _____
JOHN NEUMANN HICKEY
By:  /s/ John Neumann Hickey, Esq.
Validation of Signature: **JNH5991**
John Neumann Hickey, Esq.
PA Bar No. 61896
20 West Front Street
Media, PA 19063
Telephone: (610) 891-8883
Facsimile: (610) 891-8923
JNH@hickeylaw.net

15